UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-10360-GAO

YUDIF GLIK,
    Plaintiff,

v.

INOTEK PHARMACEUTICALS
CORPORATION,
    Defendant.

## AFFIDAVIT OF YUDIF GLIK

Yudif Glik, swearing to tell the truth, states and affirms as follows, relying on either her own knowledge or on the good faith representations of her deceased husband:

1. My husband, Michael Glik, M.D., was a cardiologist since 1974 in the former Soviet Union.

2. His inventions resulted in numerous patents in the Soviet Union. He also had a Ph.D. in clinical pharmacology.

3. We immigrated to the United States in 1993 with our two sons, one of whom is studying to be an attorney in Boston, Massachusetts.

4. If we left earlier, he would have to pay the government a great deal of money because for Soviet Jews the customs officers demand the cash equivalent of an American education for the "free" Soviet education.

1

5. My husband worked for the Inotek Corporation (Inotek). He was thrilled to get a research job after working for seven years as a security guard.

6. He was employed as a research scientist, doing cardiac work with animals.

7. Although his heart research was on the cutting edge, Inotek paid him only $37,000.00 a year (roughly 20% of his peers.) But in reality he was excited to have a research job.

8. Much to my husband's and my dismay, his application for LTD benefits fell through the cracks.

9. The way it happened is this. On September 22, 2000, Dr. Glik was hired full-time.

10. Inotek has a handbook for employment and benefits. Inotek established a long-term disability plan for all of its employees. Policy No. B5. Appendix 1, Ex. 12, Attachment B. Its Human Resources Dept. administered the plan. Id., at 2.1. All full-time employees (like Dr. Michael Glik) are eligible for long term disability (LTD) benefits. Id. 2.2. LTD benefits are paid by defendant. Id. 2.4.

11. Not until December 15, 2000 did defendant send his application for coverage to the Unum Life Insurance Company of America and the

application form was accurate to the best of his knowledge when he completed it.

12. Unfortunately, in October 2000, he was diagnosed with sigmoid cancer (i.e, intestinal cancer.)

13. This meant that, being terminally ill, Dr. Glik had no income whatsoever, or health insurance.

14. This caused him great stress because he always was a breadwinner here and in the U.S.S.R.

15. He died 14 months after he was terminated. Id.

16. In addition, the defendant fired or terminated him as follows. He was sick with sigmoid cancer, and yet Inotek denied him his employee handbook rights. See Policy No. B5 (3.0.) and E9 2.2.2.

17. My husband and I wrote requesting help frequently before and after his death.

18. The company and its law firm, Testa, Hurwitz, and Thibeault could not find a way to help us, although the law firm acknowledged the delay in the processing of the LTD application.

19. The law firm conceded that "the actual processing of Mr. Glik's application may have taken more time if it had been submitted during

a time of year when business operations are less impacted by holidays and employee vacations." See Law Firm Letter, p.2 annexed hereto.

20. It is perhaps self-evident but must be pointed out that for a proud man like my husband this shabby and unlawful treatment of him was devastating to his mental health as he became depressed by the stubborn denial of the situation while he got sicker from sigmoid cancer.

21. As for me, this kind of a situation was not what we expected when we uprooted ourselves from the Soviet scientific community to start a new life in the United States because it seems now that the lesson is that American business can be as cruel and insipid as some government agency in the U.S.S.R.

Date: _____    _____
                        YUDIF GLIK

# TESTA, HURWITZ & THIBEAULT, LLP

ATTORNEYS AT LAW

125 HIGH STREET
BOSTON, MASSACHUSETTS 02110-2704

OFFICE (617) 248-7000

FAX (617) 248-7100

Direct Dial (617) 248-7153

E-Mail aviza@tht.com

July 11, 2002

**VIA FIRST CLASS MAIL**

Lydia E. Froese
Public Protection Bureau
Insurance Division
Office of the Attorney General
200 Portland Street
Boston, MA 02114

RE: Michael Glik/Inotek Corporation

Dear Ms. Froese:

As you know, this office represents Inotek Corporation ("Inotek" or the "Company") with respect to the above-referenced matter. Please accept this letter as a response to your letter to Mr. Jean Gosselin of Inotek. Prior to addressing the issues raised in your letter, Inotek would like to make clear that Mr. Glik was a valued employee who will be missed, and it hopes to resolve this matter so that all parties involved can move on. In that vein, we hope to speak with you when you return from vacation so that we can answer any follow up questions that you may have.

In turning to your letter, we understand that Mr. Glik submitted a consumer complaint concerning Inotek and UNUM Life Insurance Company of America, in which he alleged that the companies unfairly denied his claim for long term disability benefits. As you will see below, these allegations are misplaced and based on Mr. Glik's misunderstanding of the nature of the benefit – long term disability insurance – for which he was eligible through his Inotek employment. By this response, we hope to resolve any lingering misunderstandings by Mrs. Glik and trust that your office will find, like the EEOC and the MCAD have found, that there is no basis to Mr. Glik's complaints. Accordingly, Inotek respectfully requests that the consumer complaint against it be dismissed, with prejudice.

Mr. Glik was offered employment with the Company in September 2001. In early October 2001, Mr. Glik began the application process seeking individual disability insurance. (A copy of the application is attached hereto as Exhibit A). Soon <u>after</u> submitting his insurance application, Mr. Glik was again diagnosed with cancer and went on leave for surgery. After the surgery and despite not knowing if Mr. Glik intended to return to work, Inotek continued paying Mr. Glik his regular salary for another six weeks. At the conclusion of this six-week period, the Company still had not heard from Mr. Glik regarding his condition and intent to return to work. Accordingly, the Company placed him on an unpaid leave of absence. Apparently, in connection with this leave of absence Mr. Glik looked to the disability policy for which he had applied for coverage. Since UNUM, the insurance company who administered the policy, had never

TESTA, HURWITZ & THIBEAULT, LLP

Lydia E. Froese
July 11, 2002
Page 2

approved and issued a policy in Mr. Glik's benefit, Mr. Glik was not covered by any disability insurance when he began his unpaid leave of absence.

Based on Mr. Glik's statements, it appears that he believed that the disability policy that was offered to him was a group long-term disability policy – *i.e.*, a policy for which an employee is automatically enrolled upon employment. This was not the disability insurance policy that Inotek offered. To the contrary, and as the application for the policy that was given to Mr. Glik states, the Company offers individually underwritten and guaranteed renewable disability policies, with no limitation as to pre-existing conditions, at a group corporate discount. Thus, if an employee's insurance application is approved and a policy issued by the insurance company to that employee, the employee may retain the policy even if his or her employment ends with the employer through whom the policy was offered. Given the significant expense and breadth of such a policy, however, each individual employee needs to apply for the disability policy and be accepted by the insurance company on an individual basis. As part of the application process, the insurance company conducts an investigation into the individual's past health history, in addition to requiring current physical exams and tests. The approval process usually takes from one to three months to complete, and neither the insurance company (in this case UNUM) nor Inotek can guarantee that the insurance company will approve an employee and issue a policy to his or her benefit.

It was for this individually underwritten policy that Mr. Glik applied in or around October 2001. As an initial matter, Mr. Glik's application was incomplete, and missing material information, when Mr. Glik submitted it in or around early October 2001. Generally, the Company forwards applications to its insurance broker for a review. If the application is complete, it is submitted to the insurance company to begin the investigative process. In this case, since Mr. Glik had omitted material information from his application, its submission to the insurance company was delayed as the insurance broker sought to gather the missing information. In this instance, the broker attempted to gather information regarding Mr. Glik's then-current physician, including specifically his/her name and contact information, in order to complete Mr. Glik's application. Initially, the broker contacted certain employees in the Company's administrative staff. These employees, however, did not have the missing information. Eventually, the Company contacted Mrs. Glik to obtain the information, but she, too, did not provide the requested information. Ultimately, the broker and Inotek's search for this material information took considerable time and despite their good faith efforts, still proved fruitless. In the end, despite the broker's diligent efforts, the application – in incomplete form – was forwarded to the insurance company.

While Inotek was not involved in the information gathering process or in the initial processing of Mr. Glik's application, the receipt of the application did coincide with the Thanksgiving and Christmas holidays. Thus, the actual processing of Mr. Glik's application may have taken more time than if it had been submitted during a time of the year when business operations are less impacted by holidays and employee vacations. While Inotek has no personal knowledge of the speed with which UNUM processed and investigated Mr. Glik's application, it does know that Mr. Glik's condition had no impact on the speed with which Inotek's insurance

TESTA, HURWITZ & THIBEAULT, LLP

Lydia E. Froese
July 11, 2002
Page 3

broker forwarded the application to UNUM. At the time that the application was submitted, Inotek did not know about Mr. Glik's most recent diagnosis of cancer. It is simply untrue that Inotek intentionally delayed the submission of Mr. Glik's application based on his recent diagnosis of cancer -- Inotek had no knowledge of such condition when it sent in his application.

A review of the UNUM application reveals specific questions concerning an applicant's health history. As stated above, once an applicant has responded to the questions in the application, UNUM conducts an investigation. To Inotek's knowledge, when UNUM began its investigation, it requested Mr. Glik's past medical records, including his records from a Dr. Vaninov, none of which were included with his application. Included in these medical records was Mr. Glik's past history of rectal cancer. Mr. Glik had omitted any mention of a history of cancer in his disability insurance application. Thus, while the submission of Mr. Glik's application was delayed, it was Dr. Vaninov's records, which showed that Mr. Glik had a history of cancer, that were the basis for UNUM's decision to deny Mr. Glik coverage under the disability insurance policy. UNUM's decision to deny Mr. Glik coverage is not an anomaly – in fact, UNUM has denied coverage under this same disability insurance policy to at least three other Inotek employees, all of whom have been rejected because of various health reasons.

The facts in this matter show that Inotek did not take any improper actions with respect to Mr. Glik. Like all Inotek employees, Mr. Glik was given the opportunity to apply for an individually underwritten and portable disability insurance policy offered by UNUM. UNUM denied Mr. Glik's application not because it was submitted late, but because UNUM discovered material information concerning Mr. Glik's previous medical history that rendered him ineligible for coverage under this policy. Inotek did not make this decision, and did not unfairly deny Mr. Glik's claim for long term disability benefits. Mr. Glik's claim against Inotek is misplaced, and should be dismissed, with prejudice.

I look forward to speaking with you when you return from vacation.

Thank you for your attention to this matter.

Sincerely yours,

Christian A. Aviza / cws

Christian A. Aviza

Enclosure

cc: Jean Gosselin

8989\2.2444738_1