UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-10360-GAO

|  |  |
|---|---|
| YUDIF GLIK, <br>     Plaintiff, <br><br> v. <br><br> INOTEK PHARMACEUTICALS <br> CORPORATION, <br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I DR. GLIK'S EMPLOYMENT

Michael Glik, M.D., was a cardiologist since 1974 in the former Soviet Union. Affidavit of Yudif Glik, Paragraph 1. His inventions were awarded numerous patents in the Soviet Union. He also had a Ph.D. in clinical pharmacology. Id. at Paragraph 2. Yudif and Michael Glik immigrated to the United States in 1993, with their two sons, one of whom is studying to be an attorney in Boston, Massachusetts. Id. at Paragraph 3. If they left earlier, Dr. Glik would have to pay the U.S.S.R. a great deal of money, because, for Soviet Jews, the Soviet customs officers demanded the cash equivalent of an American education for the "free" Soviet education. Id. at Paragraph 4.

In the United States, Dr. Glik worked for the Inotek Corporation (Inotek). He was thrilled to get a research job there after working for seven years as a security guard. Id. at Paragraph 5. He was employed as a research scientist, doing cardiac work with animals. Id. at Paragraph 6.

Although Dr. Glik's heart research was on the cutting edge, Inotek paid him only $37,000.00 a year (roughly 20% of his peers.) Id. at Paragraph 7.

Dr. Glik's application for Long Term Disabilities benefits fell through the cracks. Id. at Paragraph 8. The way it happened (apparently, as accounts differ in the spins of the first and second law firms paid to process the claim) is this. On September 22, 2000, Dr. Glik was hired full-time. Id. at Paragraph 9. Inotek has a handbook for employment and benefits. Inotek established a long-term disability plan for all of its employees. Policy No. B5. See Defendant's Appendix 1, Ex. 12, Attachment B. Id. at Paragraph 10. Inotek's Human Resources Dept. administered the plan. Id., at 2.1. All full-time employees (like Dr. Michael Glik) are eligible for long term disability (LTD) benefits. Id. 2.2. LTD benefits are paid by defendant. Id. 2.4. Affidavit of Yudif Glik, Paragraph 10.

Not until December 15, 2000 did Inotek send Dr. Glik's application for coverage to the Unum Life Insurance Company of America; and the application form was accurate to the best of his knowledge when he completed it. Id. at Paragraph 11. [1] Unfortunately, in October 2000, he was diagnosed with sigmoid cancer (i.e., intestinal cancer.) Id. at Paragraph 12. This meant that, being terminally ill, Dr. Glik had no income whatsoever, or health insurance. Id. at Paragraph 13. See also Deposition of Edith Glik, Ex. 10. This caused him great stress because he always was a breadwinner here and in the U.S.S.R. Id. at Paragraph 14. He died 14 months after he was terminated. Id. at Paragraph 15.   In addition, the defendant fired or terminated him as follows. He was sick with sigmoid cancer, and yet Inotek denied him his employee handbook rights. See Policy No. B5 (3.0.) and E9 2.2.2. Affidavit of Yudif Glik, Paragraph 16. The company and its law firm, Testa, Hurwitz, and Thibeault could not find a way to help them, although the law firm

acknowledged the delay in the processing of the LTD application. Id. at Paragraph 17. The former law firm (which is not the law firm defending this case) forthrightly admitted that "the actual processing of Mr. Glik's application may have taken more time if it had been submitted during a time of year when business operations are less impacted by holidays and employee vacations." See p.2 of letter of Testa, Hurwitz, and Thibeault annexed to the Affidavit of Yudif Glik.

The widow felt that "it is perhaps self-evident but must be pointed out that for a proud man like my husband this shabby and unlawful treatment of him was devastating to his mental health as he became depressed by the stubborn denial of the situation while he got sicker from sigmoid cancer", see id. at Paragraph 19, and "as for me, this kind of a situation was not what we expected when we uprooted ourselves from the Soviet scientific community to start a new life in the United States because it seems now that the lesson is that American business can be as cruel and insipid as some government agencies in the U.S.S.R. " Id. at Paragraph 20.  See also Unum Ex. 3. Appendix No. 3 10197.

## II THE FIDUCIARY OBLIGATIONS

Inotek is the fiduciary for its pension, health and welfare plans. Unlike a multiemployer plan, this company does not have independent fiduciaries run the plans, and this lack of independence leads to laxness like what happened here. Inotek has a handbook for employment and benefits and the handbook does not appear to refer to ERISA. Inotek established a long-term disability plan for all of its employees. Policy No. B5. Appendix 1, Ex. 12. Attachment B. Its Human Resources Dept. administered the plan. Id., at 2.1. All full-time employees (like Dr.

---

[1] Inotek contradicts the plaintiff, and says it sent the form on November 28, 2000. Affidavit of Carolyn Teyson. Paragraphs 5 and 7. Inotek did not ask him to correct the form, and now does a Dixie, and says he acted in bad faith, and cannot get equitable relief from this court.

Michael Glik) are eligible for long term disability (LTD) benefits. Id. 2.2. LTD benefits are paid by defendant. Id. 2.4. This meant that, being terminally ill, Dr. Glik had no income whatsoever, or health insurance. He died 14 months after he was terminated. In addition, the defendant fired him. He was sick, and yet Inotek denied him his employee handbook rights. See Policy No. B5 (3.0.) and E9 2.2.2. The case is simple and, obviously, genuine material facts are in controversy. The case does not involve rocket science. The plaintiff sues for breach of contract in law, and breach of fiduciary duty in equity. The estate and the widow also sue for emotional distress. The defendant removed the case from superior court, claiming the case involves a federal question.

### III. SUMMARY JUDGMENT STANDARD

The Court is to view the evidence from the entire summary judgment record in the light most favorable to the plaintiffs as the non-moving parties, give the plaintiffs the benefit of every inference, avoid credibility determinations, and not use summary judgment as a docket-clearing device, to determine whether a material fact is in controversy, and the defendant, a Fortune 500 corporation, is entitled to judgment as a matter of law. In *Fernandes v. Costa Brothers Masonry, Inc.*, 199 F.3d 572 (1st Cir. 1999), the First Circuit vacated the entry of an order awarding summary judgment to the defendants due to both the failure to review the whole record and apply the inferences correctly. And in *Cargill v. Harvard University*, 60 Mass. App. Ct. 585 (2004), the Massachusetts Appeals Court rejected the nearly universal practice of using summary judgment as a docket-clearing device for employment cases because of the basic problem that state of mind is the key consideration in all employment cases. Opposing the motion for summary judgment, the plaintiff argues that, under 6 year old First Circuit authority, these simple garden variety common law contract claims are not pre-empted by ERISA. See *Carpenters v. United States Fidelity & Guaranty*, 215 F.3d 136 (1st Cir. 2000) (Selya, J.).

Nothing in this case involves an ERISA plan, and federal ERISA law does not preempt the state law of employee handbook cases. Nevertheless, an ERISA claim provides a remedy for the breach of the fiduciary duty in failing to timely forward an LTD application. The defendant neglected to mention that the Supreme Court, in a clear brilliant decision of the new Supreme Court Chief Justice, untangled the mess concerning ERISA remedies in *Sereboff v. Mid Atlantic Services,* ___ U.S.___,126 S. Ct. 1869 (2006), trammeling and mincing the defendant's claims of no remedies. The Supreme Court, if not expressly, certainly implicitly overruled the contradictory opinions, relied on by the defendant, for the high mandarin proposition that the case is to be removed to federal court because there are no remedies there. [2]

The parties, thus, have, categorically, different views of the facts, and the law, making this case appropriate for about a two hour trial, and not summary disposition, with the witnesses being the widow, and the Human Resources person, who either mailed or did not mail the

---

[2] This submission features ERISA half-truths about preemption. Compare *Williams v. Ashland Eng. Co.*, 45 F.3d 588 (1995) (Robert O. Berger for the Plaintiffs) with *Carpenters v. United States Fidelity & Guaranty* , supra. In *Carpenters*, Judge Selya admits, perhaps for the first time in print in this circuit, that he was wrong about *Williams*, which then led him to reverse his own *Williams* precedent about expanding preemption. In *Carpenters*, the bond statute mentions ERISA in the text of the law. Here, by contrast, there is no word stating, suggesting, referring to, or having one single thing to do with ERISA. As to remedies, the law finally is clarified. Compare Yale Professor John H. Langbein, "What ERISA Means by Equitable," 103 Columbia L. Rev. 1317 (2003), which cried out for reform of ERISA remedies, with *Sereboff v. Mid Atlantic Services*. ___ U.S.___,126 S. Ct. 1869 (2006) in which the Supreme Court provided just such reforms, by eliminating the "law-equity game" whole cloth, and substituted a review based on the conduct of the parties, and not labeling problems law or equity. Happily, the plaintiff here requests an accounting, a broad equitable remedy. But as the manual at issue in the case does not mention ERISA this case does not involve ERISA and should not have been removed from Essex County Superior Court.

insurance LTD application at the right time, or did or did not comply with the handbook

requirements of medical verification, and "good cause" termination, when the dying Russian

physician (MD/PhD) was fired.

## IV. COUNT I: ERISA PREEMPTION AND MATERIAL FACTS IN CONTROVERSY

In Count I, alleging a conventional common law breach of handbook rights contract

claim, there are material facts in controversy and the claim is not pre-empted. The handbook of

the employer in effect at the time of the plaintiff's employment is an enforceable contract. The

plaintiff was not an at will employee. He could only be terminated for cause. See Handbook

Policy No. E9. 2.2. He was not terminated for cause. As a result thereof, the defendant owes the

plaintiff for 14 months he was ill but unpaid. The defendant supplies no evidence to meet its

burden to show that there are no material facts in controversy in regard to this handbook claim.

The defendant argues the opposite of the law of preemption of ERISA with precision.

Very little now is pre-empted by ERISA. In *Carpenters v. United States Fidelity & Guaranty*,

215 F.3d 136 (1st Cir. 2000), Judge Selya has clarified the preemption debate, " As the language

of section 1144(a) makes plain, the incidence of ERISA turns on the parameters of the phrase

'relate to'. See *California Div. of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S.

316, 324 (1997). This is not self-defining, and the Justices have been at least mildly

schizophrenic in mapping its contours. The Court initially glossed the phrase by portraying the

scope of ERISA pre-emption as 'deliberately expansive.' *Pilot Life Ins. Co. v. Derdeaux*, 481

U.S. 41, 46 (1987). As time passed, it grew more guarded, emphasizing the 'startling

presumption that Congress does not intend to supplant state law,' *New York State Conf. of Blue

Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995); accord *De Buono v.*

*NYSA-ILA Med. & Clin. Servs. Fund*, 520 U.S. 806, 813 (1997), *and warning that, unless congressional intent to preempt clearly appears, ERISA **will not** be deemed to supplant state law in areas traditionally regulated by the states*, see *Dillingham*, 519 U.S. at 325; *Travelers*, 514 U.S. at 655."(Emphasis added). Thus, to recapitulate, ERISA does not now supplement state law traditionally regulated by the states. The First Count of the amended complaint involving garden variety handbook rights is not pre-empted as the Commonwealth regulates employee handbooks. The handbooks, to be sure, do not have uniform legal significance in Massachusetts but they get a lot of scrutiny from Massachusetts courts because the contract rights of employees are traditionally regulated by Massachusetts; the import of such a handbook analysis varies according to a multitude of factors but the courts are there to apply handbook law claims.

In Massachusetts, for example, the enforceability of an employee handbook as a contract depends upon a host of considerations, including its content and the circumstances of its distribution (and not on limiting language, as defendant insists). *See O'Brien v. New Eng. Tel. & Tel. Co.*, 422 Mass. 686, 664 N.E.2d 843, 847-49 (1996). In some instances, such handbooks may meet the requirements for the formation of a contract. *See, e.g., id.* at 849. In other instances, they do not. *See, e.g., Weber v. Cmty. Teamwork, Inc.*, 434 Mass. 761, 752 N.E.2d 700, 714 (2001); *Jackson v. Action for Boston Cmty. Dev.*, 403 Mass. 8, 525 N.E.2d 411, 415 (1988. But ERISA does not pre-empt the garden variety handbook claim and there are many material facts in controversy about what Glik gets or doesn't get under the handbook for health and welfare and employment benefits. There is no doubt that the parties rely on the handbook for health and welfare and no court so far has been pro-management enough to say that when health and welfare rights are so governed employment discharge is not.

The complaint also alleges in Count I that Dr. Glik was entitled to long-term disability (LTD) benefits under the employer's handbook under the group plan; and it is the responsibility of the defendant to administer enrollment in the LTD plan. See Handbook Policy No 13.5, 2.0. The handbook does not mention ERISA so the court may be concerned what brought the case to federal court. In any case, the defendant failed to administer the LTD program; the plaintiff would have received health and welfare under the LTD policy with the insurer UNUM if the LTD program were in effect. When the plaintiff applied for LTD benefits, the insurer indicated that there was no policy in force for him.

As to the benefit administration, Judge Selya's analysis continues, "Courts have conclude in recent years that the phrase "relate to," as used in ERISA's preemption provision, cannot be read literally. "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course...." To scale the phrase down to size, the Court has devised a disjunctive test: "A law relate[s] to a covered employee benefit plan for purposes of § 514(a) if it [1] has a connection with or [2] a reference to such a plan."

Plaintiffs apply this test to the case here and find no reference to an ERISA plan and nothing here refers to a connection to the ERISA Plan. The Supreme Court plainly signaled a significant analytic shift in regard to the "connection with" portion of the ERISA pre-emption inquiry, abandoning strict textualism in favor of a more nuanced approach. For the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections. The court simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive. *Travelers*, 514 U.S. at 656; accord *Dillingham*, 519 U.S. at 324. Cataloguing the objectives of the ERISA statute is a fairly straightforward exercise.

When Congress conceived the ERISA scheme, it made manifest its intention to "protect... the interests of participants in employee benefit plans and their beneficiaries... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies." 29 U.S.C. § 1001(b). Achieving this end requires the avoidance of "a multiplicity of regulation" and, concomitantly, the creation of a climate that "permit[s] the nationally uniform administration of employee benefit plans." *Travelers*, 514 U.S. at 657.

Using this template, the Massachusetts handbook claim, on its face, in no way inhibits the accomplishment of ERISA's overall goals. It is well accepted, however, even under the new regime, that state laws which furnish alternative enforcement mechanisms threaten the uniformity that Congress labored to achieve and thus are preempted by ERISA. See also *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142-45 (1990).

ERISA preemption proscribes the type of alternative enforcement mechanism that purposes to provide a remedy for the violation of a right expressly guaranteed and exclusively enforced by the ERISA statute. See *Ingersoll-Rand*, 498 U.S. at 145. Those state laws which touch upon enforcement but have no real bearing on the intricate web of relationships among the principal players in the ERISA scenario (e.g., the plan, the administrators, the fiduciaries, the beneficiaries, and the employer) are not subject to preemption on this basis. It follows that a handbook claim which only creates claims against an employer does not constitute an impermissible alternative enforcement mechanism as that term is used in ERISA jurisprudence. The handbook claim does not constitute a proscribed alternate enforcement mechanism. By the same token, it has no other meaningful nexus with ERISA. Consequently, Count I does not have a sufficient "connection with" covered employee benefit plans to warrant ERISA preemption.

Discerning no impermissible connection, we turn to the second branch of the ERISA preemption analysis and ask whether the handbook claim refers to covered employee benefit plans so directly as to justify preemption. The key precedents are the Supreme Court's subsequent opinions in *Travelers* and *Dillingham*. The extent to which the analytical shift chronicled in these opinions applies to the "reference to" aspect of the ERISA preemption inquiry is less than obvious. The Travelers Court quickly ruled out any possibility that the state law it was called upon to consider made reference to an ERISA plan and refined the ERISA preemption analysis in the context of the "connection with" inquiry. See *Travelers*, 514 U.S. at 656. The *Dillingham* Court recounted the reasoning of Travelers without explicitly limiting that reasoning to the "connection with" inquiry, but its actual treatment of the "reference to" question relied entirely on pre-Travelers precedent and made only passing mention of ERISA's objectives. See *Dillingham*, 519 U.S. at 325-28. Thus, both opinions stop short of explicitly endorsing a new analytic modality for the "reference to" inquiry. See *Prudential Ins. Co. v. National Park Med. Ctr.*, 154 F.3d 812, 820-22 (8th Cir. 1998).

To sum up, the handbook claim, gauged by the principles embodied in recent Supreme Court case law, neither singles out ERISA plans for special treatment nor depends on their existence as an essential part of its operation. Rather, the claim is "indifferent to... ERISA coverage." *Dillingham*, 519 U.S. at 328. It is properly classified, therefore, as "one of 'myriad state laws' of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the meaning of the governing statute." *De Buono*, 520 U.S. at 815. Thus, it does not trigger preemption.

## V  ERISA PREEMPTION OR THE ABSENCE OF MATERIAL FACTS IN CONTROVERSY NOT SHOWN FOR SECOND AND THIRD COUNTS

With respect to Count II captioned Breach of the Implied Covenant of Fair Dealing, there is no pre-emption, the plaintiff had an employment contract with the defendant. The plaintiff performed his employment obligations and defendant made it impossible for him to receive LTD benefits while he was dying of cancer in 2001-2002. Inotek, thus, breached the implied covenant of good faith which inures to the benefit of the employee and the employer in all employment contracts when Inotek terminated the plaintiff and then made it impossible for him to receive his LTD benefits. "Every contract implies good faith and fair dealing between the parties to it." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991), quoting from *Warner Ins. Co. v. Commissioner of Ins.*, 406 Mass. 354, 362 n.9 (1990). A party may not conduct itself in a way "that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" *Id.* at 471-472, quoting from *Drucker v. Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976). The plaintiff and the estate are entitled to emotional distress damages under Massachusetts contract law. See, e.g. *St. Charles v. Kender*, 38 Mass. App. Ct. 155, 159 (1995) (significant and interesting line of cases where emotional distress can come from actions not unlike failing to process an application for insurance when someone struggles with cancer).

Likewise, for Count III, Breach of Contract, In January 2002, defendant's Long-Term insurance carrier stopped the process of establishing Mr. Glik's Long Term Disability benefits because the carrier was not notified of his employment status and not forwarded his medical forms even though he had filled out the application form for benefits and filed it with defendant long before that time. The provision of such benefits was a term or condition of his employment.

As a result of the breach of contract, plaintiffs' estate is entitled to consequential damages, emotional distress damages, and interest, costs and attorney fees.

## VI. COUNT IV ERISA CLAIM IS A TRIABLE EQUITABLE CLAIM

Count IV is an equitable claim under the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"). The plaintiff seeks an accounting. In *Sereboff v. Mid Atlantic Services*, 126 S. Ct. 1869, 1905 (2006), Justice Roberts clarified the issue of ERISA remedies. Justice Roberts explained, "ERISA provides for equitable remedies *to enforce plan terms*, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable." The plan's terms to be enforced: The defendant, Inotek Pharmaceuticals Corporation, established a long-term disability plan for all of its employees. Policy No. B5. Human Resources administers the plan. Id. 2.1. All full-time employees are eligible. Id. 2.2. LTD benefits are paid by defendant. Id. 2.4. The defendant did not do this.

A fiduciary is subject to the prudent person standard of care; that is, the fiduciary must act with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Morgan v. Ind. Drivers*, 975 F.2d 1467 (10th Cir. 1992). Under ERISA §502, ERISA permits plan participants to sue for equitable relief when harmed by a fiduciary's breach of duty. *Varity Corp. v. Howe*, 516 U.S. 489 (1996). A breach of fiduciary duty can occur by reason of omission. See *Newport v. Elms*, 1992 US Dist. Lexis 9130 (U.S. Dist. E.D. LA. 1992). Here, the defendant did not act prudently in forwarding

the application timely to Unum Insurance Company. The defendant did not remedy the breach despite Dr. Glik's requests. *Silverman v. Mutual Benefit*, 138 F. 3d 98 (2nd Cir. 1998).

The remedy proposed in this action is for the court to do an accounting. In the amended complaint. the plaintiff requests "that the said Defendant be ordered to pay to the Plaintiffs ...; *that said Defendant be ordered to submit to an audit and pay the cost of any audit which may be necessary to resolve any discrepancy or discrepancies which may arise in the amount due*; that said Defendant be ordered to pay the plaintiffs their costs and disbursements. including their reasonable attorney's fees in this action,....; and that the plaintiffs receive such other and further relief as the Court may deem just and proper, including all consequential and emotional distress damages; and that there be entry of judgment for his damages against defendant, interest, costs and attorney fees. See *Stark v. PPM, America*, 354 F. 3d 666 (7th Cir. 2004).

The basis of the claim is equity. The hand book agreement governing contributions for employers like Defendant who employed plaintiff provided, inter alia, that Defendant would secure health and welfare benefits to an employee like plaintiff subject to the agreement. ERISA's specific statutory duties are not meant to be exhaustive of a fiduciary's obligations; federal courts are expected to flesh out ERISA's general fiduciary duty clause, 29 U.S.C. § 1104(a). *Cent. States. S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985); *Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust*, 463 U.S. 1, 24, n. 26, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). This exercise takes account of traditional trust law but necessarily adapts it to conform with ERISA's specific provisions and underlying purpose. *Varity Corp.*, 516 U.S. at 497, 116 S.Ct. 1065; *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109-12, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

"In doing so, we recognize that these fiduciary duties draw much of their content from the common law of trusts, the law that governed most benefit plans before ERISA's enactment." See *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985) ("[R]ather than explicitly enumerating *all* of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility"); H.R.Rep. No. 93-533, pp. 3-5, 11-13 (1973), 2 Legislative History of the Employment Retirement Income Security Act of 1974 (Committee Print compiled for the Senate Subcommittee on Labor of the Committee on Labor and Public Welfare by the Library of Congress), Ser. No. 93-406, pp. 2350-23 52, 2358-2360 (1976) (hereinafter Leg. Hist.); G. Bogert & G. Bogert, Law of Trusts and Trustees § 255, p. 343 (rev.2d ed.1992) Even with respect to the trust-like fiduciary standards ERISA imposes, Congress "expect[ed] that the courts will interpret this prudent man rule (and other fiduciary standards) bearing in mind the special nature and purpose of employee benefit plans," *id.,* at 302, 3 Leg. Hist. 4569, as they "develop a 'federal common law of rights and obligations under ERISA-regulated plans.' " *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110-111 (1989); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56 (1987). This, then, frames the question in ERISA terms: did the plan breached its fiduciary standard when it failed to forward Dr. Glik's application timely to UNUM.

The plaintiff's pleadings thus do not claim "legal damages." On the contrary, the relief requested is an accounting, a traditional equitable remedy. Contrary to the most recent authority of the United States Supreme Court, the defendant argues that the plaintiff does not have a remedy. The court is to employ an accounting procedure to determine credits to plaintiff and debits to defendant. The Supreme Court has made it clear that so long as the nature of the

underlying remedies sought is equitable, the labels like restitution and contract breach do not matter.    This claim of the defendant is in error.

### VII CONCLUSION

Moreover, it is logical to conclude that if Glik has no ERISA remedy, then ERISA cannot preempt the state court remedies in Counts I-III of the amended complaint. See *Carpenters v. United States Fidelity & Guaranty*, 215 F.3d 136 (1st Cir. 2000). For ERISA preemption proscribes the type of alternative enforcement mechanism that purposes to provide a remedy for the violation of a right expressly guaranteed and exclusively enforced by the ERISA statute. Briefly, the claim of unclean hands is harsh and at the very most is a weak defense that may be trial-worthy: the claim that there was a misrepresentation in a confusing insurance policy application is tenuous but disputed directly by affidavit. But the application was not accepted or disallowed by the insurance company. This red-herring obscures the defendant's delay in sending the policy application to Unum in Portland, Maine, where in the ordinary course the insurance company gathers more information about L.T.D. applicants.

/s/

Robert O. Berger (BBO No. 038900)
11 Beacon Street, Suite 1210
Boston, MA 02108
(617) 423 -7575 Tel
(617) 275-8000 Fax
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on