UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-10360-GAO

YUDIF GLIK,
    Plaintiff,

v.

INOTEK PHARMACEUTICALS
CORPORATION,
    Defendant.

## MOTION TO FILE SUR-REPLY BRIEF

The plaintiff moves to file the attached sur-reply to the defendant's reply brief of less than six pages. The sur-reply addresses possible misapprehensions or misstatements of the law; it also deals with false or exaggerated factual claims and conclusions; and likely the sur-reply will, thus, be helpful to the United States District Court and its law clerks.

Before filing this motion, there was consultation between counsel.

1. The preemption jurisprudence of the Employee Retirement Income Security Act of 1974 ("ERISA") that had begged for the clarity that could be provided by a few simple rules, particularly in light of the fact that congressional attempts to amend the statute seem destined for failure, finally appears to have arrived. In the sur-reply, the plaintiff believes, and respectfully emphasizes that two cases, taken together giving great clarity to ERISA, govern this claim of Dr. Glick and his widow, and would if applied correctly lead to their winning the motion and the trial of the case. The cases are a 2006 United States Supreme Court watershed decision authored by Justice Roberts called *Sereboff v. Mid Atlantic Services*, __ U.S.__, 126 S. Ct. 1869 (2006), which brings true clarity to ERISA, and a recent First Circuit watershed decision, analyzed by

1

Circuit Court Judge Bruce Selya in *Carpenters v. United States Fidelity & Guaranty*, 215 F.3d 136 (1st Cir. 2000). *Sereboff* is as crucial to ERISA analysis as *Crawford* is to 6th Amendment cases. As ERISA jurisprudence now stands, formalism had been the guiding light. Times have changed and the Supreme Court and the First Circuit have clarified the rules.

    2. The factual points. The reply brief contains scandalous characterizations of the deceased physician decedent. In accusing him of lying on an insurance policy application where there is no evidence thereof, it is immaterial because the insurance company 1) never found him to have misrepresented anything, and 2) never denied the application. Hence, defendant relies on immaterial, impertinent or scandalous matters. The accusations about this dead research scientist who is a former employee of the defendant are extremely negative and depend on his inability to say whether he was aware of his sigmoid cancer when he filled out a form.

    Therefore, the plaintiff respectfully wishes to respond to the reply brief with the enclosed and attached sur-reply addressing relevant legal points and pertinent factual issues.

/s/ Robert O. Berger

Robert O. Berger (BBO No. 038900)
11 Beacon Street, Suite 1210
Boston, MA 02108
(617) 423-7575 Tel
(617) 275-8000 Fax
Attorney for Plaintiff

## CERTIFICATE

I certify that this was sent by e-mail to federal court and that the associates and partners assigned to this case received a copy.

/s/ Robert O. Berger

Robert Oscar Berger

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-10360-GAO

| | |
|---|---|
| YUDIF GLIK,<br>Plaintiff,<br><br>v.<br><br>INOTEK PHARMACEUTICALS<br>CORPORATION,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### THE SUR-REPLY BRIEF OF MICHAEL GLIK, PHD., M.D.

The plaintiff moved to file a sur-reply to the defendant's reply brief of only six pages to correct factual and legal errors of the reply brief. This is the sur-reply. Before filing there was consultation between counsel.

1. The reply brief shows that the best case for the plaintiff under the outmoded theories suggested by the defendant corporation on whether the administrator breached fiduciary duties is *Pollini v. Raytheon and Met. Life*, 54 F. Supp. 2d 54 (D. Mass. 1999, Lasker, J. ).

2. In *Pollini*, the plan did not provide benefits to Mr. Pollini. He fell off of a roof. Mr. Pollini won summary judgment. The case was argued by plaintiff's counsel. Judge Lasker is not a soft touch for claimants. Nor is he a light-weight on the law. In this case, the defendant did not even forward insurance forms. Dr. Glik died of cancer without income or health benefits thanks to Inotek Pharmaceutical Corporation. Hence, the company here does not come close to having a summary judgment case.

1

3. Therefore, even under the high deference afforded to a plan under ERISA by many judges in the federal courts under the outmoded theories hawked by the defendant corporation, there are times when a company like Raytheon crosses the line, and this is one in which Inotek Pharmaceutical Corporation, which is no Raytheon, crossed it.

4. The position hawked by the defendant is outmoded because the preemption issue of the Employee Retirement Income Security Act of 1974 ("ERISA") finally appears to have clarity. This is because of two controlling precedents.

5. The first case is a 2006 United States Supreme Court watershed decision authored by Justice Roberts called *Sereboff v. Mid Atlantic Services*, __ U.S.__, 126 S. Ct. 1869 (2006). The defendant minimized this case.

6. The second is *Carpenters v. United States Fidelity & Guaranty*, 215 F.3d 136 (1st Cir. 2000). The defendant minimized this case, too.

7. *Sereboff* is as crucial to ERISA analysis as *Crawford* is to 6th Amendment cases. To simplify, the case *eliminates* the law-equity divisions, and provides remedies for an ERISA claim like any other case.

8. Hence, the defendant's claim about how because this really is a contract case the plaintiff simply looses, is the kind of approach shot down by *Sereboff* at 1993. Also, the amended complaint alleges an accounting, and contract claims. Infuriatingly, that is what is in the amended complaint. As if in denial that a lawyer would know about the ERISA system, defendants say it is not there. The amended complaint states: "That said Defendant be ordered to submit to an audit and pay the cost of any audit which may be necessary to resolve any discrepancy or discrepancies which may arise in the amount due."

9. These ERISA issues no longer are slam dunks for employers. The rules now are fairer for the 65 million employees, and the 14 trillion dollars in the largest system in the United States economy. The reply brief howls because the game changed. It will be very hard indeed to get away with the same old ERISA games: here, the employer transferred the case to win in federal court because it wanted to be somewhere where there was no remedy. This exactly is what Judge Selya and Justice Roberts find repugnant, and their interpretations outlaw the defendant's shenanigans of using the federal court for abusive forum shopping.

10. The combined impact of the new Supreme Court and the new First Circuit analysis deflates the position of the defendant in three ways: (1) by not letting talismanic mention of the word "plan" dictate its analysis; (2) by distinguishing operational realities of modern health care delivery from largely obsolete models; and (3) by refusing to let dictionary definitions of remedies substitute for reasoned analysis. Thus, Dr. Glik cannot be overlooked just because it is Christmas time, as the former lawyers delicately put it.

11. The Court should ask whether the state law governs a choice Congress could reasonably have intended to delegate exclusively to a plan sponsor or administrator. Obviously, this is a highly questionable delegation because the plan does not mention ERISA.

12. The central question is whether it is conceivable that a Congress with the avowed purpose of protecting participants could possibly have intended for health care actors like the defendant who, in this case in the summary judgment posture, simply did not forward the insurance company forms timely.

13. Courts should determine whether the state law substantially restricts a plan administrator's choices, such that failure to preempt the law would result in a lack of uniformity that would prevent an employer from offering a chosen plan nationwide.

14. First, the functional analysis is better suited to a rapidly changing field such as health care delivery because it focuses on, and requires expert knowledge of, operational realities rather than formal structures. This is particularly important in an era of integrated health care financing and delivery entities. Second, the outcomes under a functional analysis, at least with regard to managed care claims, appear more in line with the issues that motivated passage of ERISA and traditional expectations of the legal system.

15. Finally, the functional approach provides a better measure of doctrinal stability and predictability, as well as a certain definitional rigor that may give more guidance to courts facing ERISA preemption decisions.

16. Before Justice Roberts' decision, the Supreme Court's old formalist ERISA doctrine presents a barrier to sound health policy formulation. Because current preemption doctrine was tantamount to creating a regulatory vacuum and insulating managers from liability until the Roberts' and Selya's court departures in the Supreme Court and the First Circuit, this formalist approach had greatly constrained policymakers' ability to hold managers accountable for their economic and clinical decisions. It provides results more in line with commentators' consensus regarding equitable outcomes and preemption in general, and with courts' wistful musings regarding just outcomes.

17. To be sure, this approach will not result in a wholesale rejection of preemption doctrine, particularly with regard to state regulation of managed care. It will, however, result in a more equitable and rational consideration of these issues of ERISA.

18. There is too much negativity here. The reply brief contains scandalous characterizations of the deceased physician decedent. The lawyers proceed to accuse him of lying on an insurance policy application where there is no evidence thereof. In this kind of a pleading he does not get the protections of Rule 9 demanding specificity when calling a man a fraud. The topic is immaterial because the insurance company never found him to have misrepresented anything. The insurance company never denied the application for long term benefits. Hence, defendant relies on immaterial, impertinent or scandalous matters about the plaintiff that should be stricken. The accusations about this dead research scientist who is a former employee of the defendant are extremely negative and depend on his inability to say whether he or was not aware of his sigmoid cancer when he filled out a form. This is an expert opinion question and cannot be the subject of lawyerly speculations. These scandalous claims do not appear in federal court ERISA litigation spanning 22 years and have no place here. See, e.g., *Mass. State Carpenters v. Atlantic Diving*, 635 F. Supp. 9 (D. Mass. 1984); *Williams v. Ashland Engineering*, 70 F.3d 588 (1st Cir. 1995).

19. Therefore, the reply brief, which lacks dignity and respect[1], should not pollute the discourse about significant ERISA and common law claims of an employee who emigrated from Russia with two doctoral degrees, and worked for the defendant for $39,000.00, and suffered the injury of facing death from cancer without health insurance and employee benefits.

/s/

Robert Oscar Berger (BBO No. 038900)

11 Beacon Street, Suite 1210
Boston, MA 02108
(617) 423 -7575 Tel
(617) 275-8000 Fax
Attorney for Plaintiff

CERTIFICATE

I certify that this was sent by e-mail to federal court and that the associates and partners assigned to this case received a copy.

/s/

Robert Oscar Berger

---

[1] To paraphrase the corporate brief is imposing in its granite harshness. Like some huge barbarian monolith, it is the expression of giant strength and savage genius. Also it is surrounded by a festering heap of old cans, dead vermin and used eggshells to extinguish a modest claim of a modest physician. What is left is the intellectual detritus of a field dominated by lawyers in large towers.