UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10360-GAO

YUDIF GLIK,
Plaintiff individually and as Administratix of Estate of Michael Glik,
Plaintiff

v.

INOTEK PHARMACEUTICALS CORPORATION,
Defendant.

OPINION AND ORDER
September 27, 2007

O'TOOLE, D.J.

Pending before me are the defendant's motion for summary judgment and two collateral motions, one by each side, to strike portions of the summary judgment record. The defendant's motion to strike portions of the Affidavit of Yudif Glik (dkt. no. 33) is granted to the extent that paragraphs 11 (lack of personal knowledge) and 20 (argumentative) of the Affidavit (dkt. no. 30) are stricken, and otherwise denied. The plaintiff's motion to strike the defendant's "incomplete handbook exhibit" (dkt. no. 38) is denied.

The following facts, not subject to genuine dispute on the summary judgment record, summarize the events that led to the plaintiff's commencement of this action:

Michael Glik, the plaintiff's late husband, was employed by the defendant Inotek Pharmaceuticals Corporation as a researcher beginning September 25, 2000. In accordance with the company's policy, Glik was immediately eligible for long term disability ("LTD") insurance provided by UNUM Life Insurance Company of America, with Inotek paying the full premiums. UNUM's

insurance policy defined the benefits available, and any payable benefits were to be paid by UNUM. UNUM required Inotek employees seeking LTD coverage to submit an application through Inotek's insurance broker at the time, Boyd-Neelon Associates. Other than paying the LTD premiums for its employees and facilitating the application process, Inotek had no role either in the decision to approve an employee's application for insurance or in the payment of benefits under an issued policy. Inotek's Human Resources Department acted as a conduit in getting the application from the employee to Boyd-Neelon and then to UNUM.

Glik signed an application for benefits October 2, 2000. It identified a Dr. Vaninov as Glik's personal physician. It disclosed that Glik had been diagnosed with high blood pressure. It omitted that Glik had previously had surgery for rectal cancer some years before; rather, in response to questions in the application whether he had ever had surgery and whether he had ever had a "polyp, tumor, or cancer," Glik had written "No."

The application was received by Boyd-Neelon in the latter part of October. An "underwriting manager" for Boyd-Neelon reviewed the application, found that certain questions on the application form had not been answered, and returned the incomplete application to Inotek with a request that Glik supply the omitted information and resubmit the application. Apparently Glik supplied some, but not all, of the missing information, and the revised application was received again by Boyd-Neelon in November. It was forwarded to UNUM, which received it in December. (The precise dates are not shown in the record, apparently because they cannot be reliably determined.)

In mid-January 2001, following its usual procedures, UNUM asked to be provided with Dr. Vaninov's medical records relating to Glik, which UNUM received in early February. Those records disclosed that in October 2000, shortly after the date of the application, Glik had been referred by Dr.

Vaninov to a urologist because of Glik's complaint of testicular pain. The urologist, Dr. Doyle, suspected an abdominal mass and ordered a CT scan. The record does not reflect whether one was done or what the results were.

On February 13, 2001, UNUM wrote to Glik to advise him that in light of the issue raised in the medical records, UNUM had determined to "postpone coverage." There is no evidence of any participation by Inotek in that decision.

Glik was diagnosed with colon cancer on October 21, 2000. On November 16th, he requested and was granted a three week leave of absence from Inotek, and he underwent surgery for the cancer on November 21$^{st.}$. The cancer was considered non-removable. On December 2, 2000, he told his supervisor at Inotek that he was unable to return to work as a result of his medical condition. Inotek kept him on the payroll until the end of December, but then, with no prospect that Glik would ever return, terminated his employment. Glik died of colon cancer in February 2002.

Yudif Glik, on her own behalf and as administratrix of the estate of Michael Glik, brought this action against Inotek in the Massachusetts Superior Court, alleging three claims based on state law. Inotek, asserting that the claims related to an employee benefit plan subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, removed the case to this court. Essentially acquiescing in the defendant's assertion, the plaintiff then amended the complaint to add a claim for relief under ERISA. After discovery, the defendant moved for summary judgment.

On the summary judgment record, the plaintiff has not asserted, nor even adumbrated, a viable trial-worthy claim against the defendant under either ERISA or state law.

There are only two possible avenues under ERISA that might be open to the plaintiff. First, a participant or beneficiary of a plan may sue "to recover benefits due to him under the terms of his

plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To the extent the relevant "plan" is understood to be a UNUM LTD policy, Michael Glik was never a participant (and his widow and/or estate are not therefore beneficiaries) because action on his application had been suspended. It is clear in retrospect that, because of his health condition, he did not meet UNUM's eligibility requirements and further that he likely misrepresented material facts to UNUM about his health and history. Moreover, any claim for benefits would properly be directed at UNUM, not Inotek, and UNUM is not a party to this action. To the extent that the relevant "plan" is more broadly understood to be the employer's undertaking to make available to its employees the opportunity to obtain coverage from UNUM and then to pay any premiums for the policy issued by UNUM, there can be no claim for benefits as no policy issued. Nor is there any basis in the record for concluding that Glik's "rights under the terms of the plan" were violated. The plaintiff seems to argue that Inotek had an obligation to expedite the processing of Glik's application, apparently so that it could have been issued before the nature of his cancer was fully known or disclosed. Apart from the temerity inherent in making such a contention under the facts of the case, the plaintiff cannot point to any provision of the plan that imposes such an obligation on Inotek, and nothing in the attendant circumstances would warrant implying such an obligation. No obligation, no possible violation, no claim.

The other conceivable claim would be one based on ERISA § 1132(a)(3), which authorizes an action by a participant or beneficiary "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Put aside the question whether the relief sought by the plaintiff may be

4

pursued under this provision as "other appropriate equitable relief" within the meaning of § 1132(a)(3), see Sereboff v. Mid Atlantic Med. Servs., Inc., 126 S. Ct. 1869, 1874 (2006) and Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212-14 (2002), there is no basis in the record for concluding that Inotek did or failed to do anything in violation of the terms of the statute or the plan.

This last reason is also why the plaintiff has no viable cause of action on the present record under any of the asserted state claims (assuming they are not entirely precluded by preemption, which is likely). There is simply no factual basis in the record to conclude that Inotek had any contractual obligation, whether arising from an expressed promise or an implied covenant, that it failed to fulfill. To the extent that the plaintiff claims, apart from the LTD issue, a wrongful termination of employment, it is clear that Inotek's employment of Michael Glik was at will and that it was terminated when it was clear his illness prevented him from working.

The Gliks' story is a sad one, but on the record presented in connection with the articulated claims, it is not one that justifies relief against the defendant.

The defendant's motion for summary judgment (dkt. no. 26) is GRANTED. Judgment shall enter in favor of the defendant as to all claims.

It is SO ORDERED.

    /s/ George A. O'Toole, Jr.
United States District Judge